Phyllis Gilmore, Executive Director Behavioral Sciences Regulatory Board 712 SW Kansas Avenue Topeka, Kansas 66603-3817
Dear Mrs. Gilmore:
As Executive Director of the Behavioral Sciences Regulatory Board, you pose two questions for our consideration:
 "1. Can a minor under the age of 18 access and pay for psychotherapy/ counseling/ social work services that are furnished by a licensee of the Behavioral Sciences Regulatory Board without parental consent?
 "2. What is the risk to the licensee if a parent were to disapprove of their minor age dependent accessing and paying for such services?"
Rephrasing your first question, the legal issue is whether in the absence of parental consent, an unemancipated minor under the age of 18 years is competent in the eyes of the law to consent to psychotherapy,[1]
counseling or social work services. While a number of statutes address minor consent laws in Kansas for a variety of contexts,[2] none address the issue of a minor's legal capacity to consent to outpatient mental health services. Additionally, a thorough review of Kansas case law has not disclosed any applicable decision by a Kansas appellate court. Further, we have not located any reported decision from any other state appellate court that has addressed this issue. Consequently, for guidance we must turn to the realm of non-emergency medical treatment of minors in the absence of parental consent as a somewhat comparable situation.
As Younts v. St. Francis Hospital School of Nursing, Inc.,[3]
the leading Kansas case regarding a minor's capacity to consent to non-emergency medical treatment, points out, such capacity involves the interplay of the intertwined concepts of consent and informed consent.
 "It is the settled general rule that in the absence of an emergency or unanticipated conditions arising during surgery, a physician or surgeon before treating or operating must obtain the consent of the patient, or if the patient is incompetent the consent must be obtained from someone legally authorized to give it for him. . . .
 "The consent of a patient to be sufficient for the purpose of authorizing a particular surgical procedure must be an informed consent. The patient must have reasonable knowledge of the nature of the surgery and some understanding of the risks involved and the possible results to be anticipated.
. . . .
 "[T]he consent of a parent may not be necessary or required under circumstances where the child has knowingly consented. In such cases the sufficiency of a minor's consent depends upon his ability to understand and comprehend the nature of the surgical procedure, the risks involved and the probability of attaining the desired results in the light of the circumstances which attend."[4]
This exception to the necessity of parental consent has become known as the mature minor doctrine. The concept of "maturity" in a medical context was further fleshed out in the subsequent case of Petition of Doe[5] as meaning "to have the intellectual capacity, experience, and knowledge necessary to substantially understand the situation at hand and the consequences of the choices that can be made."[6]
Given that the Kansas appellate courts have sanctioned the mature minor doctrine in relation to nonemergency medical procedures, in our opinion these courts would also sanction the mature minor doctrine in relation to the nonphysically invasive procedures involved in psychotherapy, counseling or social work. Thus, in our opinion a mature minor has the legal capacity to consent to outpatient mental health services. We hasten to add, however, that such consent must be an informed consent in relation to the potential risks and benefits of the type of mental health treatment provided. Even though outpatient mental health services are not physically invasive as are some medical procedures, as pointed out in a law journal article:
 "Psychotherapy is not risk-free, however. Some have argued that even verbal psychotherapy can sometimes have serious iatrogenic effects, including a deterioration in the symptoms or functioning in a small percentage of patients, due to the stress of therapy or changes in behavior, affect, or attitude induced by the therapy. This so-called 'deterioration effect' has been found in a number of studies."[7]
The risk to a licensee if a parent were to disapprove of their unemancipated minor age dependent accessing outpatient mental health services would be potential liability in a civil law suit. In our opinion, the outcome of such a law suit would turn on the court's evaluation of whether the minor child was sufficiently mature to consent and whether the consent was sufficiently informed. Unfortunately, there is no bright line regarding the age of sufficient maturity or regarding the sufficiency of a consent that is informed. As the Court in Younts
said, "what is a reasonable disclosure upon which an informed consent may rest must depend on the facts and circumstances of each case."[8]
Sincerely,
 PHILL KLINE Attorney General of Kansas
 Camille Nohe Assistant Attorney General
PK:JLM:CN:jm
[1] "There are probably as many definitions of psychotherapy as there are people who write about it. One review paper cites 48 different definitions (Weiner, 1976) and goes on to complicate matters by distinguishing psychotherapy from activities and events that may have psychotherapeutic value per se. While goals, strategies, tactics, and theoretical underpinnings vary widely, most psychotherapists would assert that their work with clients is intended to enhance emotional growth, foster maturity, and promote general adaptive functioning." G. Melton, G. Koocher and M Saks, Children's Competence to Consent (1983) "Competence to Consent: Psychotherapy," p. 111.
[2] E.g., K.S.A. 38-123 (pregnant minor), 65-2891 (emergency care), 38-123b (general medical care), 23-501 (family planning/contraceptive care), 65-6704 (abortion), 65-2892 (sexually transmitted disease care), 65-448 (sexual assault), 65-2892a (drug or alcohol treatment), and K.S.A. 2002 Supp. 59-2949 (inpatient mental health services).
[3] 205 Kan. 292 (1970).
[4] Id. at 298-99.
[5] 19 Kan. App. 2d 204 (1994).
[6] 19 Kan. App. 2d at 209.
[7] 50 Washington and Lee Law Review No. 2, Spring 1993, "Children's Competence to Provide Informed Consent for Mental Health Treatment," n. 220 and sources cited therein.
[8] 205 Kan. at 299.