OPINION.
{¶ 1} The appellant, Jane Doe, appeals, as provided in R.C. 2505.073, the judgment of the Hamilton County Juvenile Court denying her application to have an abortion without parental notification. The single issue for review is whether, as required by R.C. 2151.85(A)(4)(a) and (C)(1), she presented clear and convincing evidence that she "is sufficiently mature and well enough informed to decide intelligently whether to have an abortion without notification of her parents * * *." We hold that the record clearly and convincingly supports her contention that she is sufficiently mature, and we accordingly reverse the judgment of the Hamilton County Juvenile Court.
 {¶ 2} At the hearing before the juvenile court on February 22, 2005, Jane Doe testified that she is seventeen years old and lives with her parents. In ten weeks, she will be eighteen years old and can herself consent to an abortion. Then she will be twentythree weeks' pregnant.
 {¶ 3} She is a high-school senior who maintains a 3.2 grade point average. She has played the * * * redacted * * * since the fifth grade and has a weekly lesson. * * * redacted * * * She participates in marching-band competitions, clinics, and concerts. * * * redacted * * * In this capacity, she is responsible for promoting two concerts a year and for selling tickets. * * * redacted * * * For the last three months, she has worked 26 to 35 hours per week as a clerk in a convenience store and is saving her money to pay for college tuition, room and board, and books.
 {¶ 4} Upon graduation from high school, she plans to attend college. She intends to major in music education with a minor in electronic media. Her goal is a career as a music teacher and a band director. She has applied to three colleges and has received one acceptance, but must audition for the purpose of receiving financial assistance or a scholarship.
 {¶ 5} When Jane Doe's parents are away, they leave her in charge of her younger brother and sister. When she was * * * redacted * * * she watched her brother and sister, * * * redacted * * *, during the summer while her mother and father were at work.
 {¶ 6} At sixteen years of age, when medication did not resolve her * * * redacted * * * problem and her physician recommended surgery, her parents left the final decision to her. After conferring with her physician concerning the risks and benefits of surgery, she elected to have the surgery. Jane Doe has also been diagnosed with * * * redacted * * *. Her parents allowed her to decide for herself between a course of physical therapy or surgery. After discussing the options with her neurosurgeon, she accepted the recommendation that she first try the physical therapy.
 {¶ 7} When she learned that she was pregnant, Jane Doe contacted the Planned Parenthood clinic. She testified that the pregnancy resulted from her second sexual encounter. In the first, a condom was used, but the second occasion was without protection. The father of the child favors an abortion and has, since being informed, abandoned Jane Doe. She told the juvenile court, "I've learned that one time without a condom can be enough." She said that she intends to go on the pill.
 {¶ 8} At Planned Parenthood, she talked to a counselor for an hour about her options. She was given a packet of written information addressing the options of having the baby, adoption, or abortion. She testified that when reviewing the information, she learned death was a risk of abortion. She called the counselor twice and further discussed by telephone for twenty minutes the risks and benefits as well as her options.
 {¶ 9} Jane Doe testified that if her father learned that she had an abortion, she believed that he would not allow her to live at home when she turned eighteen and that he would not provide any financial assistance to her. She testified that the intense opposition to abortion of her mother and father was due to their political convictions rather than their religious beliefs. However, with a child and lacking her parents' financial assistance, she determined that she could not enroll in college in August or September.
 {¶ 10} The General Assembly has recognized the principle that most minors will benefit from the "guidance and understanding" of their parents, but that some are sufficiently mature to make the abortion decision alone. Ohio v. Akron Center for Reproductive Health (1990)497 U.S. 502, 520, 110 S.Ct. 2972. Under R.C. 2151.85(A)(4)(a) and (C)(1), an unemancipated minor may have an abortion, bypassing notification to her parents, if the juvenile court finds by clear and convincing evidence that she "is sufficiently mature and well enough informed to intelligently decide to have an abortion without the notification of her parents, guardian, or custodian." This requirement has been held to be constitutional on Fourteenth Amendment due-process grounds. See In Re Jane Doe 1 (1990), 57 Ohio St.3d 135, 137,566 N.E.2d 1181, citing Akron Center at 520, 110 S.Ct. 2972.
 {¶ 11} In his dissent in Jane Doe 1, Justice Herbert R. Brown observed that juvenile and appellate courts have struggled in these so-called bypass cases to determine if the minor is sufficiently mature. See id. at 142, 566 N.E.2d 1181. In his dissent, Justice Andy Douglas commented, "While some would like to make this case one of proabortion versus anti-abortion or pro-choice versing pro-life, it is nothing of the sort. What we have before us is a case of statutory interpretation — and only
statutory interpretation." Id. at 140, 566 N.E.2d 1181.
 {¶ 12} Although the majority opinion in Jane Doe 1 declined to adopt and articulate factors indicative of a minor's maturity on grounds that such factors are a legislative function, four justices agreed that judicially created standards are required, as the term "sufficiently mature" is not defined in R.C. 2151.85. See id. at 139, 566 N.E.2d 1181.
 {¶ 13} Justice Brown concluded that the issue of the minor's maturity should be based "on how she has conducted her entire life and not just on the events which have brought her to court." Id. at 143, 566 N.E.2d 1181. He proposed a seemingly comprehensive list of factors to determine if the minor is sufficiently mature: "(1) the minor's age, (2) overall intelligence, (3) emotional stability, (4) credibility and demeanor as a witness, (5) ability to accept responsibility, (6) ability to assess the future impact of her present choices, (7) ability to understand the medical consequences of abortion and apply that understanding to her decision, and (8) any undue influence by another on the minor's decision." Id. at 143, 566 N.E.2d 1181 (footnote omitted).
 {¶ 14} The juvenile court's dismissal of Jane Doe's application in this case is to be scrutinized on a case-by-case basis under an abuse-of-discretion standard. See id. at syllabus. "The term `abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable."State v. Adams (1980), 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (citations omitted), cited in Jane Doe 1, 57 Ohio St.3d at 137, 566 N.E.2d 1181.
 {¶ 15} The juvenile court found that Jane Doe is physically mature and intelligent, and that "her demeanor was appropriate." It dismissed her application for two reasons: (1) "[s]he has not considered that her parents might be supportive of her," and (2) "[s]he has not had the benefit of discussing her medical condition and the risks of having the baby versus the risks of having an abortion with a doctor who is aware of her medical history."
 {¶ 16} The finding that Jane Doe has not considered that her parents might be supportive of her decision to terminate her pregnancy is speculative and clearly erroneous. She testified that her father was vehemently opposed to abortion. She observed her father's unfavorable reaction to television programs about the subject. She said that her parents were reluctant to discuss abortion in her presence. Although she believed her mother might be supportive, her father would not. She testified that she believed her mother would "follow him." If she had an abortion, she believed that her father would not allow her to live at home and would provide no financial assistance for her college education.
 {¶ 17} Jane Doe did not offer evidence that she had discussed the risks of an abortion with a physician who knew of her physical condition. However, Exhibit 1, "Fact Sheet for Early Surgical Abortion," given to her by the Planned Parenthood counselor, shows that a doctor will decide if an abortion can be performed based on the results of Jane Doe's medical history, physical examination, blood test and lab results, and ultrasound, as part of Planned Parenthood's routine procedure. Admittedly, Jane Doe testified about concerns about her immune system. Her main concern, however, is that if she is to have the baby, she must delay or jeopardize college and her music career. She expressed concern that she cannot financially support a child and attend college. Furthermore, she knows that an abortion can be performed in the twenty-fourth week, when she is eighteen, and while it would be statistically safe, she testified that she knows the risk of death is seven times greater than for a first-trimester abortion. Still, she intends to have an abortion if she is unsuccessful in obtaining bypass approval.
 {¶ 18} We are mindful of the presumption that the juvenile court's findings are correct because generally the trial court is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in assessing credibility. SeeJane Doe 1, 57 Ohio St.3d at 138, 566 N.E.2d 1181.
 {¶ 19} We conclude, however, that (1) Jane Doe's testimony about her desire to avoid a potential and probable conflict with her parents; (2) her academic standing and intelligence; (3) her musical talent and desire to teach music; (4) her participation in extracurricular school activities; (5) her acceptance by a college; (6) her part-time employment and saving for college expenses; (7) her counseling about the options other than termination of pregnancy; (8) her consideration and understanding of the risks and benefits of abortion or foster care and the options to abortion; and (9) her introspection and freedom from coercion related to the consequences of her decision, is clear and convincing evidence that she is sufficiently mature and well informed to have an abortion without notification of her parents. We are convinced that the counseling by Planned Parenthood informed Jane Doe of the options other than abortion and the associated risks of this medical procedure, and that she has expressed a rational concern about the consequences of notifying her parents that she intends to terminate her pregnancy.
 {¶ 20} This case has similarities to our decision of In re Doe, 1st Dist. No. C-020443, 2002-Ohio-3926. There, we held that the juvenile court had abused its discretion in finding that a seventeen-year-old who had graduated from high school with a 4.1 grade point average, had a full academic college scholarship, had participated in various extracurricular activities, and desired to protect her relationship with her family from potential conflict lacked sufficient maturity to decide whether to have an abortion. Moreover, the evidence of Jane Doe's maturity in this case is similar to the evidence in In Re Complaint of Jane Doe (1992),83 Ohio App.3d 904, 615 N.E.2d 1142, and In Re Complaint of Jane Doe
(1999), 134 Ohio App.3d 569, 731 N.E.2d 751. After reviewing the transcript of Jane Doe's testimony, we cannot perceive what other evidence she could have offered to establish her maturity.
 {¶ 21} Finally, we must mention that the guardian ad litem, appointed by the juvenile court, was vehemently opposed to granting Jane Doe's application. The juvenile court, however, did not refer to the guardian ad litem's statement to the court or state that the guardian's remarks had influenced its decision to dismiss the application. Although the guardian ad litem presented several reasons justifying her opposition, it is questionable whether they conform to the maturity standard contemplated by R.C. 2151.85(A)(4)(a) and (C)(1). In discussing whether Jane Doe was sufficiently mature, the guardian ad litem said, "I think she comes across as being well articulate and intelligent, but I do question whether or not she is near the maturity level.
 {¶ 22} "And the reason I do that is because she had a one-time casual sexual encounter that was unprotected without using birth control and it makes me wonder whether or not she has the maturity level at her age and her years and almost being a senior, just a few months short of eighteen.
 {¶ 23} "Because I believe she understood the possible consequences, that she could potentially be pregnant or get pregnant by having sex. She was aware of that.
 {¶ 24} "So I question whether she really has the maturity level that her age indicates * * *."
 {¶ 25} Though the guardian ad litem was well intentioned, the standard she used as a gauge for maturity has no relevance under the statute. It would disqualify minors at seventeen simply because they should have known better.
 {¶ 26} Accordingly, we hold that the judgment of the Hamilton County Juvenile Court is unreasonable and thus an abuse of discretion. See AAAAEnterprises, Inc. v. River Place Community Urban Redevelopment Corp.
(1990), 50 Ohio St.3d 157, 161, 553 N.E. 2d 597. The assignment of error is sustained.
 {¶ 27} It is therefore ordered that the judgment of the trial court be reversed and that the application of Jane Doe be granted. Jane Doe is herby authorized to consent to the performance or inducement of an abortion without the notification of a parent, guardian, or custodian.
 {¶ 28} If Jane Doe believes that this opinion may disclose her identity, she has a right to appear and argue at a hearing before this court. She may perfect this right to a hearing by filing a motion for a hearing within fourteen days of the date of this decision.
 {¶ 29} The clerk is instructed that this decision is not to be made available for release until (1) twenty-one days have passed from the date of the decision and appellant has not filed a motion, or (2) if appellant has filed a motion, after this Court has ruled on the motion.
Judgment accordingly.
PAINTER, J., concurs.
SUNDERMANN, J., dissents.